U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

SEP 21 2000

CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

GEORGE DANIELS                    §
                                  §
VS.                               § CIVIL ACTION NO. 4:99-CV-549-Y
                                  §
CITY OF ARLINGTON, TEXAS, ET AL.  §

## ORDER DENYING PLAINTIFF'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

Pending before the Court is Plaintiff's Motion for Partial Summary Judgment, filed February 14, 2000 [doc. # 11-1]. Having carefully considered the motion, response, and reply, the Court finds that the motion should be DENIED.

## I. FACTS

Plaintiff George Daniels was employed by the City of Arlington, Texas ("City"), as a police officer from August 1985 to September 1998. In 1997, Plaintiff, who considers himself a devout evangelical Christian, began to wear a small, gold cross on his shirt while working in a plain-clothes position. In January 1998, Plaintiff was reassigned to a position that required him to wear a uniform. He sought and was denied approval by the police chief to wear the cross on his uniform. Nevertheless, Plaintiff continued to wear the cross while on active duty. Some time later, Plaintiff was notified that he was in violation of the "no-pins" policy issued by the City's chief of police in General Order No. 205.02(C)(2)(c), which reads:



ENTERED ON DOCKET

SEP 22 2000

U.S. DISTRICT CLERK'S OFFICE

> No button, badge, medal, or similar symbol or item not listed
> in this General Order will be worn on the uniform shirt unless
> approved by the Police Chief in writing on an individual
> basis.

(Def.'s App. at 4.)  In addition to the written notification, the chief

of police gave Plaintiff several warnings and finally an order to remove

the cross from his uniform.  The chief of police also provided Plaintiff

with several permissible alternative means to express his faith, including

wearing a cross on a ring or bracelet or agreeing to a reassignment

to a plain-clothes position.  After Plaintiff refused to remove the

cross from his uniform, he was terminated in September 1998.

In the present motion for partial summary judgment, Plaintiff seeks

a limited judgment by the Court that General Order No. 205.02(C)(2)(c)

of the Arlington Police Department is unconstitutional on its face as

an invalid prior restraint of speech protected by the First Amendment.

Plaintiff alleges that the general order is overbroad, giving the police

chief unfettered discretion to determine what types of individual

expression may be displayed on an officer's uniform.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the record establishes that no

genuine issue as to any material fact exists, and the moving party is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Hill*

*v. London, Stetelman, & Kirkwood, Inc.*, 906 F.2d 204, 207 (5th Cir.

1990).  To determine whether an issue of material fact exists, the Court

must first consult the applicable substantive law to ascertain what

2

fact issues are material to the disposition of the case. *Lavespere v. Niagara Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir. 1990), *cert. denied*, 114 S. Ct. 171 (1993). The Court must then review the evidence presented, viewing the facts and inferences drawn from those facts in the light most favorable to the nonmoving party. *Newell v. Oxford Management Inc.*, 912 F.2d 793, 795 (5th Cir. 1990); *Medlin v. Palmer*, 874 F.2d 1085, 1089 (5th Cir. 1989). However, the Court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Where the movant bears the burden of proof on a claim or defense, he must establish all elements of the claim or defense to prevail on summary judgment. *Western Fire Ins. Co. v. Copeland*, 651 F. Supp. 1051, 1053 (S.D. Miss. 1987), *aff'd*, 824 F.2d 970 (5th Cir. 1987).

When the moving party has carried its summary judgment burden, the respondent "must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). The respondent must produce evidence, not merely argument, in response to a movant's properly supported motion for summary judgment. *See Foval v. First Nat'l Bank of Commerce*, 841 F.2d 126, 129 (5th Cir. 1988); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

### III. DISCUSSION

Government, in its role as government, is severely restricted by the First Amendment from placing restraints on speech. But when government acts as employer, the constraints of the First Amendment are less severe. In *Pickering v. Board of Education*, 391 U.S. 563 (1968), the Supreme Court delineated the constitutional restraints that exist on a public employer's authority to terminate employees for the type or content of their speech. The *Pickering* test requires the Court to balance "the interests of the [employee], as citizen, in commenting upon matters of public concern and the interests of the State, as employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 568. Additionally, a public employee's speech is entitled to First Amendment protection only when that speech involves a matter of public concern.[1] *See Connick v. Myers*, 461 U.S. 138, 146 (1983) ("When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment.").

---

[1] For purposes of ruling on the present motion for partial summary judgment, the Court need not decide whether Plaintiff's speech involved a matter of public concern as opposed to a matter of personal interest. Plaintiff's motion seeks only a declaratory judgment that General Order No. 205.02(C)(2)(c) is an unconstitutionally overbroad restriction of speech, regardless of its application. *See Scott v. Meyers*, 191 F.3d 82, 86 (2nd Cir. 1999); *but see Wilson v. City of Littleton*, 732 F.2d 765, 769 (10th Cir. 1984) (holding First Amendment did not protect police officer who wore black shroud across his badge to mourn death of officer from another town; not a matter of public concern).

The purpose of the *Pickering* balancing test is to ensure the "effective and efficient fulfillment of [the government's] responsibilities to the public." *Id.* at 150. "To this end, the Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs." *Id.* at 151. Particularly relevant to this concern is the nature of the employment relationships that would be jeopardized by the speech: "when close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate." *Id.*

The Supreme Court has emphasized that the state-interest element of the *Pickering* test "focuses on the effective functioning of the public employer's enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987); *see also Jones v. Collins*, 132 F.3d 1048, 1053 (5th Cir. 1998) ("[T]he employee's interest in 'commenting on matters of public concern' must outweigh the public employer's interest 'in promoting the efficiency of the public services it performs through its employees.'") (quoting *Pickering*).

General Order No. 205.02(C)(2)(c) of the Arlington Police Department prohibits officers from wearing any button, badge, medal, or similar symbol on the uniform shirt without first obtaining written approval from the police chief. Obviously, the general order on its face restricts officers' expression on all subjects, involving matters of both public and private concern. The general order also gives the police chief unfettered discretion to determine what symbols, if any, may be worn

5

on the uniform shirt.  The Court must decide whether the general order, on its face, is unconstitutional under the *Pickering* standard.

In *Goldman v. Weinberger*, 475 U.S. 503 (1986), the Supreme Court upheld the application of an Air Force regulation to a Jewish serviceman who was prohibited from wearing a yarmulke while in uniform.[2]  The Court stated that deference should be given to military uniform regulations when a public employee's First Amendment rights are at issue.  *Id.* at 507.  The Court deferred to the "professional judgment of the Air Force . . . that the traditional outfitting of personnel in standardized uniforms encourages the subordination of personal preferences and identities in favor of the overall group mission.  Uniforms encourage a sense of hierarchical unity by tending to eliminate outward individual distinctions except for those of rank."  *Id.* at 508.  The military's need for "instinctive obedience, unity, commitment, and esprit de corps" outweighed the serviceman's interest in exercising his religious beliefs. *Id.* at 507.

The Fifth Circuit has applied *Goldman* to uphold disciplinary actions against INS agents who wore union lapel pins on their uniforms.  *See United States Dept. of Justice v. FLRA*, 955 F.2d 998 (5th Cir. 1992). The court held that a law enforcement agency's anti-adornment policy is entitled to deference when weighing the government's interest against the employee's interest under the *Pickering* standard.  *See id.* at 1006.

---

[2]The regulation prohibited servicemen from wearing headgear while indoors.  *See Goldman*, 475 U.S. at 505.

The court found that "allowing border patrol agents to wear union pins while on duty would create factionalism, interfere with discipline and create an appearance of partiality." *Id.* The court held that the INS's interest in promoting the efficiency of the border patrol outweighed the agents' interest in wearing union pins while on duty, justifying the "minimal intrusion" of the free-speech rights of union employees.[3] *See id.* at 1007.

Other courts have recognized the interest of a governmental entity in preserving the appearance of impartiality. *See Thomas v. Whalen,* 51 F.3d 1285 (6th Cir. 1995) (upholding disciplinary action against police officer who made unauthorized public presentations on behalf of political organization while in uniform); *Paulos v. Breier,* 507 F.2d 1383 (7th Cir. 1974) (recognizing and protecting interest of municipality in preserving nonpartisan police force and appearance thereof); *Detroit Fire Fighters Ass'n, Local 334 v. City of Detroit,* 508 F. Supp. 172 (E.D. Mich. 1981) (permitting city to restrict public appearance of uniformed firefighters to advocate defeat of proposed charter amendment); *Connealy v. Walsh,* 412 F. Supp. 146, 158 (W.D. Mo. 1976) (upholding juvenile court's ban on partisan bumper stickers on employee cars).

Courts also have upheld numerous police grooming regulations on the basis that they were rationally related to the promotion of safety of persons and property. *See, e.g., Quinn v. Muscare,* 425 U.S. 560

---

[3]The court concluded that the agents could continue to express their support for unions "in myriad other ways." *FLRA,* 955 F.2d at 1007.

(1976); *Weaver v. Henderson,* 984 F.2d 11, 13 (1st Cir. 1993); *Hottinger v. Pope Cty.,* 971 F.2d 127 (8th Cir. 1992); *Rathert v. Village of Peotone,* 903 F.2d 510 (7th Cir. 1990); *Marshall v. District of Columbia Gov't,* 559 F.2d 726 (D.C. Cir. 1976).

In the present case, the City asserts that symbols such as union pins and religious emblems worn on a police officer's uniform can create factionalism and the appearance of partiality to those persons who do not share that officer's political or religious beliefs. The Court concludes that the City's interest in fostering the appearance of a neutral police force is entitled to great deference. Moreover, the City's interest outweighs its officers' interest in expressing matters of public concern by wearing symbols on their uniforms. A police officer's uniform is not a forum for fostering public discourse or expressing one's personal beliefs. The City has a strong interest in preventing the appearance of endorsing particular viewpoints or religious beliefs. Succinctly stated, a uniform with a cross, a star, a crescent, or a political button attached to it is not a "uniform."[4]

The Court further concludes that the general order is only a minimal intrusion on the First Amendment rights of police officers. The regulation does not prohibit officers from wearing religious symbols apart from their uniforms while on active duty. For example, the regulation does not prohibit an officer's wearing a religious symbol

---

[4]*See Webster's Ninth New Collegiate Dictionary* 1290 (9th ed. 1991) ("of the same form with others: conforming to one rule or mode: CONSONANT").

8

on his ring or on his bracelet.  Although wearing such a symbol in this manner would be just as visible and meaningful as wearing the cross on his shirt, the expression is more readily interpreted by others as a personal statement rather than as an official endorsement by the government.

The Court finally concludes that the grant of unfettered discretion afforded the police chief under the general order is constitutionally permissible.  Plaintiff has cited no precedent suggesting that the government, when acting as employer, must follow a set of quasi-legislative guidelines to ensure that its administrative decisions satisfy the requirements of the First Amendment.  Indeed, to ensure effective administration of the police department, the police chief must have final discretion to determine what shall constitute the uniform of the department.[5] The sole authority of the police chief to make exceptions to the general rule is wholly consistent with his administrative role. That role permits him to determine what speech, if any, may be expressed as part of the police officer's uniform.

Therefore, for the reasons stated above, Plaintiff's Motion for Partial Summary Judgment is DENIED.

SIGNED September __21__ , 2000.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

TRM/val

_____

[5]*See, e.g., Goldman*, 475 U.S. at 509 ("The desirability of dress regulations in the military is decided by the appropriate military officials, and they are under no constitutional mandate to abandon their considered professional judgment.").

9